# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:24-cv-00066-MR

| | |
|---|---|
| ROBERT PRICE, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ATRIUM HEALTH, et al., )<br><br>Defendants. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant Ronald Hamirck's Motion for Summary Judgment [Doc. 43] and the Plaintiff's "Motion in Opposition to Summary Judgment" [Doc. 61].

## I.    BACKGROUND

The Plaintiff Robert Price filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred while he was a pretrial detainee at the Cleveland County Detention Center ("CCDC").[1]  The Plaintiff's unverified Amended Complaint[2] passed initial review against Ronald Hamrick, a CCDC detention officer, for deliberate indifference to a serious

---

[1] The Plaintiff is presently an inmate of the State of North Carolina.

[2] The unverified Complaint failed initial review.  [See Docs. 1, 7].

medical need.[3]  [Doc. 9: Order on Initial Review].  The Plaintiff seeks

damages.  [Doc. 8 at 5].

Defendant Hamrick has filed a Motion for Summary Judgment.  [Doc.

43].  The Court entered an Order in accordance with Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for

filing a response to the summary judgment motion and of the manner in

which evidence could be submitted to the Court.  [Doc. 49: Roseboro Order].

The Plaintiff  responded in opposition to the Motion for Summary Judgment

[Doc. 52: MSJ Response; 53: Plaintiff's Decl.; Doc. 61: Plaintiff's Supp.

Resp.[4]]; and the Defendant replied [Docs. 54, 62: MSJ Replies].  These

matters are ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict

---

[3] The Amended Complaint also passed initial review as to Ashley Williams; however, the Court subsequently dismissed this defendant from the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [See Doc. 29].

[4] The Plaintiff's unverified "Motion in Opposition to Summary Judgment" [Doc. 61] is construed as a Supplemental Response and is denied.

2

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

3

248.  To that end, only evidence admissible at trial may be considered by the Court on summary judgment.  Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts ….  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The following is a summary of the forecast of relevant evidence in the light most favorable to the Plaintiff.[5]

The Cleveland County Sheriff's Office operates two detention facilities: a larger facility commonly referred to as the CCDC; and the smaller Law Enforcement Center ("LEC"). [Doc. 43-2: Mauney Decl. at ¶ 3]. The Plaintiff was booked into the LEC on October 12, 2021.[6] [Id. at ¶ 5]. He informed staff at intake that he had preexisting bladder and urethra problems, that he needed a catheter for difficulty urinating, that he had been scheduled for surgery on October 18, and that he feared being housed with other inmates due to his medical issues. He was placed into an administrative segregation cell at the LEC for his safety. [Doc. 53: Plaintiff's Decl. at ¶ 3; Doc. 43-2: MSJ Ex at 8 (10/12/21 Incident Report)].

---

[5] The unverified Complaint and Amended Complaint cannot be considered on summary judgment as a forecast of evidence. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes). Further, the document attached to the Plaintiff's Amended Complaint [Doc. 8-2], which appears to be a partial transcript of the Plaintiff's criminal proceeding, is not authenticated and, in any event, has no relevance or evidentiary value. See generally Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("[U]nsworn, unauthenticated documents cannot be considered on a motion for summary judgment"); Elam v. Early, 138 F.4th 804, 816 (4th Cir. 2025) (hearsay is inadmissible for summary judgment purposes).

[6] Assistant Detention Administrator Michael Mauney states in his Declaration that the Plaintiff entered the CCDC on October 21, 2021; defense counsel, however, represents that this was an inadvertent typographical error and that the Plaintiff in fact entered the CCDC on October 12, 2021. [See Doc. 54 at 1].

The Plaintiff was transported to the hospital on the evening of October 21, 2021 for the insertion of a catheter, and he returned to the LEC later that night. [Doc. 43-2: MSJ Ex at 10 (10/21/21 Incident Report)]. Because the Plaintiff was still complaining of difficulty urinating upon his return from the hospital, he was transferred for close monitoring from the LEC to a camera cell at the CCDC, where Defendant Hamrick was stationed. [Doc. 43-2: Mauney Decl. at ¶ 7; Doc. 43-1: Hamrick Decl. at ¶ 3; Doc. 53: Plaintiff's Decl. at ¶ 3]. Hamrick knew of the Plaintiff through Hamrick's brother, a county narcotics officer. [Id.].

On November 26, 2021, the Plaintiff pressed the emergency call button in his cell. [Doc. 53: Plaintiff's Decl. at ¶ 3]. He told Hamrick that he was declaring a medical emergency, that he could not urinate, and that he needed to see a nurse. In response, Hamrick told the Plaintiff to "man up." [Id.]. The Plaintiff does not know whether Hamrick notified medical personnel of his condition. [Id.]. It was Hamrick's standard practice to notify a superior or the jail's nursing staff whenever an inmate complained directly to him about a medical need. [Doc. 43-1: Hamrick Decl. at ¶ 3]. Hamrick would not have departed from that protocol for the Plaintiff. [Id.]. Nor would Hamrick ignore a directive from medical to escort an inmate to the clinic. [Id. at ¶ 4]. The Plaintiff managed to pass blood and urine as the day went on, which

6

gave him some relief.  [Doc. 53: Plaintiff's Decl. at ¶ 3].  The Plaintiff passed more urine the next day.  [Id.].

On November 28, 2021, the Plaintiff was unable to urinate at all.  [Id.]. He pressed the emergency call button and asked Hamrick to inform the nurse that he could not urinate.  [Id.].  After a few hours elapsed and the Plaintiff still could not urinate, he pressed the call button again.   Hamrick said that if the Plaintiff kept hitting the button, he would come "beat [Plaintiff's] ass." [Id.].  Hamrick eventually came to the Plaintiff's cell at 2:00 or 3:00 that afternoon and escorted the Plaintiff to medical to see a nurse. [Id.].  Hamrick told the Plaintiff that his reason for delaying the Plaintiff's medical attention was "well you know we have people who fake for attention, I thought you were faking." [Id.].

The Plaintiff was sent to an outside hospital where he received emergency surgery that day.  [Id. at ¶ 5; Doc. 43-2: MSJ Ex at 16 (Nov. 29, 2021 Incident Report)].  The Plaintiff was discharged from the hospital back to the CCDC.  He received additional medical assistance for a dislodged catheter on November 29, 2021.  [Doc. 43-2: Mauney Decl. at ¶¶ 10-11]. Hamrick's shift had ended on November 28, 2021 at 7:00 p.m.  [Doc. 43-2: MSJ Ex at 27(Hamrick time sheet)].  He was not on duty when the Plaintiff was discharged from his surgery or when the Plaintiff needed additional

7

assistance on November 29, 2021.  [Id.; Doc. 43-2: Mauney Decl. at ¶¶ 10-11].

All CCDC inmates, including those on administrative segregation, are afforded daily access to kiosks located outside the cells, which allow written communication with jail staff and the submission of grievances.  [Doc. 43-2: Mauney Decl. at ¶ 9].  Inmates on administrative or security lockdown are given an opportunity to use the kiosk during the recreation period.  [Doc. 43-2: MSJ Ex at 29 (CCSO Policy & Procedure 5.10].  Inmates wishing to see jail medical staff typically enter their requests into kiosks which are located outside of the cells.  [Doc. 43-1: Hamrick Decl. at ¶ 4].  Those requests are routed directly to medical staff.  [Id.].

Four grievances were submitted through the electronic kiosk system in the Plaintiff's name during October and November 2021.  [Doc. 43-2: MSJ Ex at 25 (Ex 8)].  The Plaintiff denies that he submitted these grievances, asserting that he was "unfamiliar with the kiosk system" and that he was locked in his cell without access to the kiosk when two of the four grievances were submitted.  [Doc. 53: Plaintiff's Decl. at 4-5 (referring to grievances as "false" and "inaccurate"].

## IV.   DISCUSSION

### A.   Exhaustion

The Defendant first moves for summary judgment on the grounds that the Plaintiff failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a § 1983 action.  42 U.S.C. § 1997e(a).  The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Id.  The PLRA's exhaustion requirement applies to all inmate suits about prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).  The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

A prisoner, however, need only exhaust those remedies actually available to him. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). A grievance process is unavailable:

> (1) where the remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative scheme is "so opaque" that it is "practically ... incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 643-44). The Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance). "And no combination of 'special circumstances' can excuse a prisoner's failure to exhaust.'" Hardin, 2023 WL 3969989, at *2 (quoting Ross, 578 U.S. at 639).

Viewing the evidence in the light most favorable to the Plaintiff, there are genuine disputes of material fact regarding the Plaintiff's access to the grievance process and the accuracy of the matters contained within the Plaintiff's purported grievances. The Court will, therefore, deny the Defendant's Motion for Summary Judgment on exhaustion grounds.

## B. Deliberate Indifference to a Serious Medical Need

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). To prevail on such a claim, a plaintiff must show that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

See id. at 611. Under this standard, a plaintiff need not show that the defendant actually knew of the detainee's serious medical condition but must show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. Negligence or the accidental failure "to do right by the detainee," however, are not enough. Id. at 611-12.

Here, the forecast of evidence viewed in the light most favorable to the Plaintiff demonstrates that while the Plaintiff reported having difficulty urinating on November 26, he was eventually able to urinate and obtain some relief, which continued into the following day.  Thus, despite the lack of medical attention to his initial complaints, the Plaintiff did not suffer any immediate harm. When the Plaintiff reported on November 28 that he was unable to urinate at all, the forecast of evidence demonstrates that the Plaintiff's receipt of medical care was thereafter delayed, at most, by a matter of hours because Hamrick had initially believed that the Plaintiff was faking.  Such a brief negligent or accidental delay of care is insufficient to demonstrate a Fourteenth Amendment violation.  There is also no forecast of evidence that Defendant Hamrick's conduct harmed him, as the Plaintiff was transported to the hospital for surgery that same day.

Defendant Hamrick's Motion for Summary Judgment will, therefore, be granted on the Plaintiff's deliberate indifference claim.

## C.    Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  "To determine whether an officer is entitled to

qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendant violated his constitutional rights, the Defendant is entitled to qualified immunity. As such, summary judgment for the Defendant would also be proper on this ground.

## IV.   CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Ronald Hamirck's Motion for Summary Judgment [Doc. 43] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiff's "Motion in Opposition to Summary Judgment" [Doc. 61] is construed as a Supplemental Response and is **DENIED**.

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendants and to close this case.

**IT IS SO ORDERED.**

Signed: May 20, 2026

Martin Reidinger
Chief United States District Judge

14